**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY GILLARD,

                                        Plaintiff,

            - v -                                            Civ. No. 9:03-CV-1537
                                                                      (TJM/RFT)
JOHN W. BURGE; RONALD F. NELSON, SR.;
RAYMOND LUPO; RANDOLPH CALHOUN;
C.O. ATKINS; C.O STANTON; C.O. HAILSTON;
and JOHN DOE,[1]

                                        Defendants.

---

**APPEARANCES:**                                          **OF COUNSEL:**

GARY GILLARD
Plaintiff, *Pro Se*
01-A-1613
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ANDREW M. CUOMO                              MARIA MORAN, ESQ.
Attorney General for the State of New York        Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

            *Pro se* Plaintiff Gary Gillard brings a civil action pursuant to 42 U.S.C. § 1983, alleging

Defendants Lupo, Calhoun, Atkins, Stanton, and Hailston retaliated against him for filing

---

            [1] Although Plaintiff lists two John Doe Defendants in his Complaint, the docket reflects that there is only one
John Doe Defendant.  The John Doe Defendants have not been identified, served, or appeared in this action.  *See infra*
Part II.D.

grievances and complaints, denied him of access to the law library, and interfered with his mail, in violation of the First Amendment, denied him meals, yard, showers, and phone privileges in violation of the Eighth Amendment, Defendant Burge failed to stop his subordinates from committing constitutional violations, and Defendant Nelson failed to remedy his lack of access to the law library after being informed through "written documents."[2]  Dkt. No. 1, Compl. at §§ 4, ¶¶ 1-39, Conclusion, & 5, First, Second, & Third Cause of Action.  Defendants bring a Motion for Summary Judgment.  Dkt. No. 52.  Plaintiff opposes the Motion.  Dkt. No. 60.  For the reasons to follow, it is recommended that the Defendants' Motion for Summary Judgment be **granted**.

## I.  FACTS[3]

The alleged actions occurred while Plaintiff was housed at the Auburn Correctional Facility. Dkt. No. 52, Defs.' 7.1 Statement at ¶ 4; Dkt. No. 60, Pl.'s 7.1 Statement at ¶ 4.  On May 20, 2003, Plaintiff sent Superintendent Burge a letter, labeling it a "formal complaint."  Dkt. No. 52, Maria Moran, Esq., Affirm., dated July 31, 2006, Ex. B, Burge Compl., dated May 20, 2003.  This letter pertained to denial of callouts, not being informed of packages, and Plaintiff's mail being stolen.  *Id.* Plaintiff further stated the denial of his callout, which included medical callouts, was a result of retaliation.  *Id.*  Plaintiff sent another letter to Superintendent Burge on May 23, 2003, regarding the

---

[2] The Court notes that Plaintiff alleges denial of access to the law library in violation of the Fourteenth Amendment and interference with his mail under the Eighth Amendment. Dkt. No. 1, Compl. at § 5, First and Second Cause of Action.  However, this Court will properly construe his law library and interference with mail claims to be under the First Amendment.

[3] Plaintiff has failed to comply with Northern District of New York Local Rule 7.1(a)(3).  Plaintiff submits a Statement of Facts, however, Plaintiff did not mirror the movant's Statement of Material Facts by either admitting or denying each of the movant's assertions in matching numbered paragraphs. Dkt. No. 60.  Instead, Plaintiff either states that some statements are irrelevant to the case or seems to provide lengthy explanations.  *Id.*  Furthermore, Plaintiff does not make citations to the record when he denies a statement.  *Id.*  As such, any facts not specifically controverted by Plaintiff may be deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).  In light of Plaintiff's *pro se* status, however, this Court will utilize Plaintiff's Complaint and Statement of Facts as well as Defendants' Statement of Material Facts with accompanying Exhibits to adduce the uncontested, material facts of the case.

conduct of certain unnamed officers and noting that he believed these officers were trying to provoke him into violating facility rules and were retaliating against him. *Id.*, Ex. B, Burge Lt., dated May 23, 2003.

On June 5, 2003, Plaintiff sent a letter to Deputy Nelson stating that the law library copy machine was broken for an extended period of time and it needed to be fixed because he had deadlines in several cases. *Id.*, Ex. B, Nelson Lt., dated June 5, 2003.  In his letter, Plaintiff stated that he believed this was done intentionally and that he was having problems with callouts to access the library. *Id.*  On August 14, 2003, Plaintiff submitted another letter to Deputy Nelson regarding the denial of his access to the law library. *Id.*, Ex. B, Nelson Lt., dated Aug. 14, 2003.  Plaintiff stated he filed seven requests to go to the library but was only permitted access on one of those occasions. *Id.*  He noted that the copy machine was out of order for some time and that he had deadlines in other court cases that needed to be met. *Id.*  He also asserted he was denied his meal that morning. *Id.*  Then on August 22, 2003, Plaintiff again sent a letter to Deputy Nelson complaining of the denial of his access to the law library. *Id.*, Nelson Lt., dated Aug. 22, 2003. Thereafter, on September 2, 2003, Plaintiff received a response from Deputy Nelson, which stated that a review of the records showed that Plaintiff made ten access requests to the law library and that Plaintiff was placed on callout eight of ten times. *Id.*, Ex. B, Nelson Mem., dated Sept. 2, 2003. Nelson relayed that one request was denied because there was no room after processing all requests and that the second request was denied because the wrong date was placed on the request slip. *Id.* Nelson asserted that if Plaintiff had legal due dates of thirty days or less, he could make an application for special access to the law library. *Id.*

On August 21, 2003, Plaintiff sent a letter to Superintendent Burge regarding denial of

access to the law library.  *Id.*, Ex. B, Burge Lt., dated August 21, 2003, at 2:30 p.m.  Plaintiff

expressed that he asked an officer if he had a library callout on the morning of August 21, 2003, but

was told he did not.  *Id.*  He further described a problem with the copy machine and how it was

broken and that officers refused to tell inmates when there was a callout.  *Id.*  Plaintiff informed

Burge that he missed a deadline in a federal case, that he would be filing suit due to the library

problems, and that he understood there would be retaliation for filing suit.  *Id.*[4]

The same day, August 21, 2003, Plaintiff sent another letter to Superintendent Burge in

relation to missing mail receipts from two envelopes containing legal mail that he sent by certified

mail.  *Id.*, Ex. B, Burge Lt., dated Aug. 21, 2003, at 10 p.m.  Plaintiff stated that since he did not

receive mail receipts for the certified mailings, he wanted to know if the mailings were actually sent.

*Id.*  Subsequently, on August 27, 2003, Plaintiff filed a grievance numbered AUB-40115-03,[5]

claiming that on August 17, 2003, Plaintiff placed six envelopes of legal mail into the mailbox but

while two of the envelopes were sent by certified mail, return receipts were not requested, and,

when Plaintiff did not receive receipts for these two envelopes, he believed that his mail was stolen.

Defs.' 7.1 Statement at ¶ 11; Moran Affirm., Ex. D, Grievance, dated Aug. 27, 2003; Pl.'s 7.1

Statement at ¶ 11.  Accordingly, Plaintiff asked for a refund of $12.51 to cover his costs for mailing

and copying.  Defs.' 7.1 Statement at ¶ 11; Moran Affirm., Ex. D, Grievance, dated Aug. 27, 2003;

Pl.'s 7.1 Statement at ¶ 11.  The Inmate Grievance Resolution Committee ("IGRC") denied the

---

[4] Plaintiff also received two Inter-Departmental Communications from Captain Gummerson and Mark Bradt, Deputy Superintendent of Security, stating that Plaintiff's requests regarding his callouts were without merit since he was allowed eight out of ten callouts to the law library.  Dkt. No. 52, Maria Moran, Esq.,  Affirm., dated July 31, 2006, Ex. B, Gummerson Mem., dated Sept. 4, 2003, & Bradt Mem., dated Sept. 12, 2003.

[5] The Grievance was submitted by Plaintiff on August 22, 2003, and received by the IGRC on August 27, 2003. *See* Moran Affirm., Ex. D, Grievance, dated Aug. 27, 2003.

action requested by Plaintiff noting that the mail clerk had sent the mail with additional free postage stamps so that the mail could properly be received by the post office and that the mail clerk was unsure of why Plaintiff did not receive anything in return since the mail clerk had no control of the mail as it was the responsibility of the post office to deal with the matter.  Defs.' 7.1 Statement at ¶ 12; Moran Affirm., Ex. D, IGRC Decision, dated Sept. 9, 2003; Pl.'s 7.1 Statement at ¶ 12.  Plaintiff appealed the decision noting that he never discussed return receipts, but only the certified mail receipt.  Defs.' 7.1 Statement at ¶ 13; Moran Affirm., Ex. D, IGRC Decision, dated Sept. 9, 2003; Pl.'s 7.1 Statement at ¶ 13.  Superintendent Burge denied the grievance stating that "[r]eturned receipts are initiated by addressee and returned by U.S. Postal Service."  Defs.' 7.1 Statement at ¶ 14, Moran Affirm., Ex. D, Superintendent's Resp., dated Sept. 29, 2003; Pl.'s 7.1 Statement at ¶ 14.  Plaintiff appealed this decision to the Central Office Review Committee ("CORC"), which denied the grievance on the basis that there is a difference between certified and return receipt services and an investigation conducted into the matter did not substantiate Plaintiff's claims.  Defs.' 7.1 Statement at ¶ 15; Moran Affirm., Ex. D, CORC Review, dated Nov. 5, 2003; Pl.'s 7.1 Statement at ¶ 15.

Plaintiff filed a second grievance on September 5, 2003, numbered AUB-40176-03.[6]  Defs.' 7.1 Statement at ¶ 16; Moran Affirm., Ex. E, Grievance, dated Sept. 5, 2003; Pl.'s 7.1 Statement at ¶ 16.  Plaintiff asserted that Officer Hailston, on his 3-11 p.m. shift, was passing out the mail when he threw a piece of Plaintiff's mail over the ledge of his cell, which landed on the bars of another cell block.  Defs.' 7.1 Statement at ¶ 16, Moran Affirm., Ex. E, Grievance, dated Sept. 5, 2003; Pl.'s 7.1

---

[6] The Grievance was submitted by Plaintiff on August 28, 2003, and received by the IGRC on September 5, 2003.  *See* Moran Affirm., Ex. E, Grievance, dated Sept. 5, 2003.

Statement at ¶ 16.  Plaintiff states another inmate saw Plaintiff's name and cell number written on the envelope.  Defs.' 7.1 Statement at ¶ 16; Moran Affirm., Ex. E, Grievance, dated Sept. 5, 2003; Pl.'s 7.1 Statement at ¶ 16.  Plaintiff further noted that Officer Hailston told him that the mail was retrieved but that it belonged to another inmate.  Defs.' 7.1 Statement at ¶ 16; Moran Affirm., Ex. E, Grievance, dated Sept. 5, 2003; Pl.'s 7.1 Statement at ¶ 16.  Plaintiff asked that the "officers" stop stealing his mail and stop the retaliation.  Defs.' 7.1 Statement at ¶ 16; Moran Affirm., Ex. E, Grievance, dated Sept. 5, 2003; Pl.'s 7.1 Statement at ¶ 16.  Instead of going to the IGRC for review, an investigation was conducted by a security supervisor, Sergeant Withers, who interviewed the inmate witness and attempted to interview Plaintiff, to which Plaintiff refused the interview.  Defs.' 7.1 Statement at ¶ 17; Moran Affirm., Ex. E, Sgt. Withers Mem., dated Sept. 7, 2003; Pl.'s 7.1 Statement at ¶ 17.  C.O. Hailston provided Sergeant Withers with a memo outlining the incident, in which he stated that once the piece of mail fell, another officer handed it to him and he delivered that mail to another inmate because it did not belong to Plaintiff.  Defs.' 7.1 Statement at ¶ 17; Moran Affirm., Ex. E, Hailston Mem., dated Sept. 7, 2003; Pl.'s 7.1 Statement at ¶ 17.  Superintendent Burge denied the request based upon the investigation and stated there was no evidence to support the allegations.  Defs.' 7.1 Statement at ¶ 18; Moran Affirm., Ex. E, Superintendent's Resp., dated Sept. 10, 2003; Pl.'s 7.1 Statement at ¶ 18.  Plaintiff appealed the decision to the CORC and the grievance was again denied.  Defs.' 7.1 Statement at ¶ 19; Moran Affirm., Ex. E, CORC Review, dated Oct. 22, 2003; Pl.'s 7.1 Statement at ¶ 19.  The CORC noted a proper investigation was conducted and that Plaintiff could not substantiate his claims of harassment.  Defs.' 7.1 Statement at ¶ 19; Moran Affirm., Ex. E, CORC Review, dated Oct. 22, 2003; Pl.'s 7.1 Statement at ¶ 19.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier

of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.

1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the nonmoving party.  *Nora Beverages, Inc. v. Perrier*

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this

point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential*

*Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.  Exhaustion of Remedies

Defendants claim that Plaintiff has failed to exhaust his remedies as to every incident alleged

except Defendant Hailston's interference with Plaintiff's mail and retaliation, and the question

regarding the two certified mailings, although no particular Defendant was named in that grievance.

*See* Dkt. No. 52, Defs.' Mem. of Law at pp. 6-8; Moran Affirm., Exs. D, Grievance, dated Aug. 27,

2003, & E, Grievance, dated Sept. 5, 2003.  Plaintiff does not address the issue of exhaustion.  *See*

Dkt. No. 60, Pl.'s Mem. of Law.

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that

"[n]o action shall be brought with respect to prison conditions under [section 1983], or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  This exhaustion requirement "applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532

(2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

The New York State Department of Corrections has created a three-step process to exhaust all administrative remedies available to inmates. *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004). First, the inmate must file a grievance complaint with the Grievance Clerk within fourteen (14) days of the incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(1). The complaint is then submitted to the IGRC to review the grievance. *Id.* at § 701.7(a)(2)-(5). Second, if the inmate is unsatisfied with the IGRC decision, then the inmate may appeal to the Superintendent. *See id.* at § 701.7(b). Third, if the inmate is unsatisfied with the Superintendent's determination, the CORC is to make a final administrative determination. *Id.* at § 701.7(c). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983." *Colon v. Harvey*, 344 F. Supp. 2d 896, 897 (W.D.N.Y. 2004) (citing *Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001); *Santos v. Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

Here, Plaintiff submitted two grievances that were fully exhausted, and only one named a Defendant in this action, Officer Hailston. *See* Moran Affirm., Exs. D, Grievance, dated Aug. 27, 2003, IGRC Decision, dated Sept. 9, 2003, Superintendent's Resp., dated Sept. 29, 2003, & CORC Review, dated Nov. 5, 2003, & E, Grievance, dated Sept. 5, 2003, Superintendent's Resp., dated Sept. 10, 2003, & CORC Review, dated Oct. 22, 2003. However, Plaintiff sent numerous letters to prison officials complaining of his denial of access to the law library, yard, and showers, interference with mail, retaliation for filing grievances, and other such matters germane to Plaintiff's Complaint. *See generally id.*, Ex. B; *see also supra* Part I. Nevertheless, "[l]etters of complaint, regardless of the addressee, are not part of the grievance process and do not satisfy the exhaustion requirement." *Black v. Selsky*, 2004 WL 625621, at *3 (W.D.N.Y. Jan. 13, 2004) (quoting *Scott v.*

*Gardner*, 287 F. Supp. 2d 477, 488-489 (S.D.N.Y. 2003)); *see also Lashley v. Artuz*, 2004 WL 1192090, at *3 (S.D.N.Y. May 27, 2004) (quoting *Nelson v. Rodas,* 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) for the proposition that "[c]ourts have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements").  Plaintiff has not presented any reason to the Court why he was unable to properly exhaust his claims utilizing the grievance process as he did in filing two previous grievances.  *See generally* Pl.'s Mem. of Law.  Moreover, all the complaint letters sent by him would not satisfy the exhaustion requirement.  Therefore, all claims asserted against Defendants Lupo, Calhoun, Atkins, and Stanton are not exhausted.[7]

Accordingly, it is recommended that the Motion for Summary Judgment be **granted** as to Lupo, Calhoun, Atkins, and Stanton for failure to exhaust.[8]

### C.  First Amendment Claims

#### 1.  Retaliation Claim

Plaintiff claims that Defendant Hailston retaliated against him for filing grievances and complaints when Hailston threw Plaintiff's personal mail over a ledge, which fell onto another cellblock.  Compl. at ¶ 18.  Hailston asserts that no violation occurred.  Defs.' Mem. of Law at pp. 10-11.

---

[7] Additionally, since Plaintiff did not oppose Defendants' assertion that he did not exhaust his remedies, the Court will not make the three-step inquiry as suggested by the Second Circuit.  *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004); *see also Braham v. Clancy*, 425 F.3d 177, 181-82 (2d Cir. 2005).

[8] Defendants ask this Court to dismiss all claims due to the fact that the instant Complaint contains both exhausted and unexhausted claims.  Defs.' Mem. of Law at p. 7.  However, in making this recommendation, the Court notes its familiarity with *Woodford v. NGO*, ___ U.S. ___, 126 S. Ct. 2378 (2006), and *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910 (2007), and finds that the Supreme Court's holding that the PLRA requires proper exhaustion, that every defendant need not be named during the grievance process, and that a case should not be dismissed when there is a mixture of exhausted and unexhausted claims has no bearing on our findings since the Court will address those claims that have indeed been exhausted.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted).  There must also be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded).  Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. August 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-

73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original).

Here, the fact that the filing of grievances is constitutionally protected conduct is not contested. Defs.' Mem. of Law at p. 11. Plaintiff filed his first grievance on August 22, 2003, and subsequently filed his grievance against Hailston on August 28, 2003. *See supra* notes 5 & 6. However, Plaintiff bears the burden to show that the filing of the grievance was a substantial and

motivating factor for the adverse action taken by Hailston, that is Hailston throwing Plaintiff's mail over a ledge, and that there was a causal connection between the two.  Temporal proximity may show a retaliatory motive and in this case, the period of time from which the first grievance was filed to the time of the alleged incident is approximately one week, which to this Court would constitute the temporal proximity needed to show motive.

As to the "adverse action," the Court must determine, objectively, whether the throwing of the mail over the ledge would deter a similarly situated inmate of ordinary firmness from exercising his constitutional rights.  At this juncture, Plaintiff cannot sustain his burden.  Objectively speaking, the type of adverse action claimed would not deter a similarly situated inmate.  This was an isolated occurrence.  Furthermore, another officer retrieved the mail and supposedly the mail was returned to its rightful owner.  *See* Moran Affirm., Ex. E, Hailston Mem., dated Sept. 7, 2003, Superintendent's Resp., dated Sept. 10, 2003, & CORC Review, dated Oct. 22, 2003.  In any event, the impact of this type of "adverse action" would be *de minimis* at best as this type of incident would not deter another inmate from filing other grievances, lawsuits, or anything of the like.  *See generally Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303, n. 1 (W.D.N.Y. 2006) (finding that denial of plaintiffs grievances and removal from certain jobs did not constituted adverse actions); *Davidson v. Bartholome*, 2006 WL 3060039, *8-9 (S.D.N.Y. Oct. 12, 2006) (granting summary judgment on retaliation claim where retaliatory act was *de minimis*); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731-32 (S.D.N.Y. 2002) (holding that the issuance of a false misbehavior report, a restraint order resulting in confinement in keeplock, denial of showers and telephone privileges, and placement of restraints on an inmate when he was outside his cell constituted adverse acts).

Therefore, it is recommended that the Motion for Summary Judgment be **granted** on the

retaliation claim.

## 2.  Mail Claim

Plaintiff states that Defendant Hailston interfered with his mail by stealing a piece of mail when it was dropped and not returned to Plaintiff.  Compl. at ¶ 18 & p. 15.  Hailston avers that he did not interfere with Plaintiff's mail and that in any event this one instance would not constitute a violation.  Defs.' Mem. of Law at p. 9.

A prisoner maintains the right to the flow of incoming and outgoing mail as protected by the First Amendment.  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing, *inter alia*, *Heimerle v. Attorney General,* 753 F.2d 10, 12-13 (2d Cir. 1985)).  Any "[r]estrictions on prisoners' mail are justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'"  *Id.* (quoting *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986)) (alterations in original).  Therefore, "in balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail."  *Id.* (citing, *inter alia*, *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989)).  Although an inmate has the right to be there when his legal mail is opened, an isolated event of tampering will be insufficient to allege a constitutional violation unless the inmate can show "that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'"  *Id.* (quoting *Cancel v. Goord,* 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001)); *see also Wolff v. McDonnell,* 418 U.S. 539, 574-76 (1974); *Morgan v. Montanye,* 516 F.2d 1367, 1371 (2d Cir. 1975); *Gill v. Riddick*, 2005 WL 755745, at *15 (N.D.N.Y. Mar. 31, 2005).

With regard to non-legal incoming mail, a prison's "regulations or practices affecting a prisoner's receipt of non-legal mail must 'be reasonably related to legitimate penological interests[.]'" *Cancel v. Goord,* 2001 WL 303713, at *6 (quoting *Thornburg v. Abbott*, 490 U.S. at 409). "[P]rison security is a sufficiently important governmental interest to justify limitations on a prisoner's [F]irst [A]mendment rights." *Id.* (quoting *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986)). In order to state a claim for interference with incoming non-legal mail, the inmate will have to show a pattern and practice of interference, rather than merely showing an isolated incident, without the legitimate penological interest. *Id.*; *see also Chavis v. Kienert*, 2005 WL 2452150, at *14 (N.D.N.Y. Sept. 20, 2005) (citations omitted).

Here, as against Hailston, Plaintiff does not claim that there was interference with his legal mail, only personal mail. Compl. at ¶ 18. Plaintiff's mail was not opened nor were any regulations or practices placed upon his mail to hinder his access. Furthermore, Plaintiff only states one instance in which Hailston allegedly interfered with his non-legal mail and not a pattern and practice of interfering with Plaintiff's mail. *See Cancel v. Goord,* 2001 WL 303713, at *6; *Chavis v. Kienert*, 2005 WL 2452150, at *14.

Therefore, it is recommended that the Motion for Summary Judgment be **granted** on the interference with mail claim.[9]

---

[9] Plaintiff further claims that Defendant Hailston violated his rights by denying him meals, access to the yard, phones, showers, commissary, and copies. Compl. at p. 15. However, the Court will not address these claims as they were not exhausted. *See supra* Parts I & II.B. In addition, Plaintiff complained in grievance AUB-40115-03 that he did not receive return receipts when he sent two envelopes by certified mail, therefore he assumed the envelopes were stolen. *Id.* Though the Court cannot glean from Plaintiff's Complaint which Defendant, if any, committed this act, the Court notes, as the CORC stated, that there is a difference between certified mail and return receipt services. *See* Moran Affirm., Ex. D, CORC Review, dated Nov. 5, 2003. If Plaintiff did not fill out a return receipt request form in addition to the slip for certified mail, Plaintiff would not receive anything in return from the United States Post Office to show the mailing was in fact received. *See id.* Instead, when a person utilizes the certified mailing procedure, all Plaintiff is entitled to is a copy of the certified mailing receipt with the article number, which allows a person to track the item. *See* http://www.usps.com/send/waystosendmail/extraservices/certifiedmailservice.htm. Plaintiff did in fact have the article

### D.  Personal Involvement

Plaintiff asserts that Burge failed to stop his subordinates from committing constitutional violations and Nelson failed to remedy his lack of access to the law library after being informed through "written documents."  Compl. at § 4, ¶¶ 2, 4, 7, 8, 12-15, & 34, & Conclusion.  Burge and Nelson state they were not personally involved in any violation and that no claim for supervisory liability can be established.  Defs. Mem. of Law at pp. 12-14.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement.  Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control."  *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (emphasis in original) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).  In addition, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).  Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist:

---

numbers with which to track his two envelopes.  *See* Moran Affirm., Ex. D, Grievance, dated Aug. 27, 2003.  Thus, Plaintiff has failed to establish any First Amendment violation in regards to grievance AUB-40115-03.

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

It is clear that Plaintiff has failed to allege that Burge or Nelson was personally involved in any constitutional violation. *See* Compl. at § 4, ¶¶ 2, 4, 7, 8, 12-15, & 34. As for Plaintiff's claim that Burge failed to stop his subordinates from committing constitutional violations, Burge, as the Superintendent, was aware of Plaintiff's complaints regarding C.O. Hailston and the two certified mailings for which Plaintiff stated he did not obtain return receipts through the grievance process. *See* Moran Affirm., Exs. D, Superintendent's Resp., dated Sept. 29, 2003, & E, Superintendent's Resp., dated Sept. 10, 2003. However, as stated above, no constitutional violation occurred in relation to either of the grievances filed. *See supra* Part II.C. & note 9.

Moreover, Nelson, after receiving a letter from Plaintiff regarding the denial of access, responded by stating that his records were reviewed and it showed that Plaintiff made ten access requests to the law library and that Plaintiff was placed on callout eight out of ten times. *Id.*, Ex. B, Nelson Mem., dated Sept. 2, 2003. Nelson further stated in his response that one request was denied because there was no room after processing all requests and that the second request was denied because the wrong date was placed on the request slip. *Id.* Plaintiff was told that if he had legal due dates of thirty days or less, he could make an application for special access to the law library. *Id.* In order to establish a claim for lack of access to the law library, Plaintiff has to prove that he suffered an actual injury, namely "that a non-frivolous legal claim was frustrated or impeded

-17-

due to the actions of prison officials." *Murray v. Michael*, 2005 WL 2204985, at *16 (N.D.N.Y.

Sept. 7, 2005) (citing *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)); *see also*

*Ramirez v. Holmes*, 921 F. Supp. 204, 207 (S.D.N.Y. 1996) (stating that if a plaintiff alleges he was

actually denied access to the law library, the plaintiff "must allege that the deprivation proximately

caused some prejudice or denial of a legal claim" (citations omitted)).  Here, even though Plaintiff

asserts that he missed a deadline in a federal case, Plaintiff has failed to establish that he was

actually injured by any alleged interference with his lack of access to library since the Court is

unaware of whether his federal case presented a non-frivolous legal claim.  *See* Compl.; Dkt. No.

60, Resp.  Thus, there was no wrong for Nelson to remedy.

Accordingly, it is recommended that the Motion for Summary Judgment be **granted** as to

Burge and Nelson.

### E.  John Doe Defendants

When the Complaint was filed, Plaintiff initiated suit against two John Doe Defendants.  *See*

Compl. at § 3(h) & (f).  On January 12, 2004, in reviewing Plaintiff's Complaint and *In Forma*

*Pauperis* Application, this Court warned that the Marshals could not effect service on a "John Doe"

Defendant and if Gillard wished to pursue such claims, "he shall take reasonable steps to ascertain

their identities."  Dkt. No. 4 at p. 2.  We further warned that if such individuals are not timely

served, the action would be dismissed against them.  *Id.*  Summonses were issued for the

Defendants, including the John Doe Defendants, on January 12, 2004.  On February 10, 2004, the

United States Marshal's Office sent notice to Plaintiff that they could not serve John Doe

Defendants.  Dkt. No. 5, Notice, dated Feb. 10, 2004.  The Court is unaware of any efforts made by

Plaintiff to extrapolate the identities of the two John Doe Defendants.  Plaintiff has not sought Court

intervention on this issue.

Defendants state that because Plaintiff did not effectuate service of process within the time period set forth in the Federal Rules of Civil Procedure or the Northern District of New York Local Rules, the Complaint should be dismissed against the John Doe Defendants.  *See* Defs.' Mem. of Law at p. 1 n.1; *see also* FED. R. CIV. P. 4(m) & N.D.N.Y.L.R. 4.1(b).  Plaintiff does not address this issue in his Response to the Motion for Summary Judgment.  *See* Dkt. No. 60.  Since Plaintiff had an opportunity to address this issue and chose not to and was on notice as to the consequences of a failure to act, the Court recommends dismissal of the John Doe Defendants.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 52) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be **DISMISSED** as to the John Doe Defendants; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   February 20, 2007
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge